UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BINH VAN TRAN, | * * * | |
| Petitioner, | * * | |
| v. | * * * | |
| PATRICIA HYDE, *Acting Director of the Boston Field Office, U.S. Immigration and Customs Enforcement*; TODD LYONS, *Acting Director of U.S. Immigration and Customs Enforcement*; MICHAEL KROL, *HSI New England Special Agent in Charge*; and KRISTI NOEM, *Secretary of the U.S. Department of Homeland Security*; in their official capacities, | * * * * * * * * * * * | Civil Action No. 25-cv-12546-ADB |
| Respondents. | * * | |

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

Before the Court is Respondents' motion to transfer Petitioner's petition for writ of habeas corpus to the United States District Court for the Western District of New York. [ECF No. 8]. For the reasons set forth herein, the motion is **DENIED**.

I.     BACKGROUND

   A.     Factual Background

Petitioner is a noncitizen who entered the United States as a refugee from Vietnam in approximately 1982, when he was about 26 years of age. [ECF No. 1 ("Pet.") ¶¶ 3, 20–21]; see [ECF No. 15-1 ¶ 1]. In or around October 2000, an immigration judge ordered Petitioner's

removal to Vietnam because of a prior criminal conviction.  [Pet. ¶¶ 25–26, 30]; see also [ECF No. 15-1 ¶ 1].  At the time of the order, Petitioner was in Immigration and Naturalization Service ("INS") custody,[1] but he was released in April 2001 under an order of supervision.  [Petition ¶¶ 29, 32].  Since then, for the last 24 years, Petitioner has been regularly checking in with ICE as required by the terms of his order of supervised release and has remained fully compliant with those terms to the best of his knowledge.[2]  [Id. ¶ 35].

In late August 2025, Petitioner checked in with ICE via email.  [ECF No. 15-1 ¶ 4].  Around the week of September 3, 2025, Petitioner was instructed to report to ICE's Boston Field Office during the next week.  [Pet. ¶¶ 41–42]; [ECF No. 15-1 ¶ 5].  On September 11, 2025, at approximately 9:45 AM, Petitioner, accompanied by his attorney, reported to ICE's Boston Field Office in Burlington, Massachusetts.  [ECF No. 15-1 ¶ 7].  After he had waited for several hours, an ICE officer approached him and asked whether he had a passport or travel document, as ICE was deporting people to Vietnam.  [Id. ¶ 8].  Petitioner told the officer that he did not have any of those documents, but that he was willing to complete paperwork to obtain the necessary documents.  [Id.]; [ECF No. 15-2 ¶ 3].  The officer then gave Petitioner a self-declaration form to initiate the request for travel documents, which Petitioner filled out with the help of his attorney, who then returned the forms to the officer.  [ECF No. 15-1 ¶ 8].  About an hour later, at approximately 2:00 PM, an ICE officer sent Petitioner and his attorney to an office, at which point Petitioner was detained.  [ECF No. 15-1 ¶ 10–12]; [ECF No. 15-2 ¶ 4].  Petitioner's attorney asked the ICE officers where Petitioner would be taken, and they answered that they did

---

[1] INS was the precursor to Immigration and Customs Enforcement ("ICE").
[2] Since 2020, Petitioner has been checking in virtually with ICE on an annual basis.  [Petition ¶ 36].

not know.  [ECF No. 15-2 ¶ 5].  The attorney then provided her phone number to the ICE officers, who agreed to contact her once they knew where Petitioner would be detained.  [Id.].  As of October 3, 2025, Petitioner's attorney had not been contacted to apprise her of his location.  [Id.].

      Despite her best efforts, including continuing to check the ICE detainee locator system, Petitioner's attorney could not discover Petitioner's location before she filed his Petition.  [ECF No. 15-2 ¶ 6].  As it turned out, when Petitioner's attorney filed the instant Petition with this Court, at 6:54 PM on September 11, 2025, Petitioner was en route to Buffalo, New York, [ECF No. 15-2 ¶¶ 6, 14], on a flight that departed New Bedford, Massachusetts, at approximately 6:06 PM and landed in Buffalo at approximately 7:03 PM, about ten minutes after the Petition was filed.  [ECF No. 8-1 ¶ 8].  Another session of this Court issued an Emergency Order Concerning Stay of Transfer or Removal at 7:15 PM, twenty-one minutes after the Petition was filed.  [ECF No. 2].  Petitioner's attorney continuously monitored the ICE detainee locator system throughout the night of September 11, 2025, and the morning of September 12, 2025.  [Id. ¶ 9].  Finally, at around 2:30 PM on September 12, she rechecked the ICE detainee locator system and learned that Petitioner was in the Buffalo Federal Detention Facility in Batavia, New York.  [Id. ¶ 11].

      **B.**      **Procedural History**

      Petitioner filed the instant Petition on September 11, 2025.  [Pet.].  On September 19, 2025, Respondents filed a motion to transfer the Petition to the United States District Court for the Western District of New York in light of Petitioner's transfer to the Buffalo Federal Detention Facility in Batavia, New York.  [ECF No. 8].  The Court initially granted the motion on September 22, 2025, [ECF No. 9], based on its understanding that Petitioner had consented to the transfer, but stayed the transfer on September 24, 2025, after learning that Petitioner intended

3

to oppose the motion, [ECF Nos. 12, 13]. Petitioner subsequently filed an opposition to the transfer on October 3, 2025. [ECF No. 15]. The Court held oral argument on October 20, 2025. [ECF No. 19].

## II. DISCUSSION

### A. The District of Confinement and Immediate Custodian Default Rules

As a general matter, a habeas petition challenging physical custody under 28 U.S.C. § 2241 is subject to two threshold requirements before a district court can exercise statutory jurisdiction over it. See Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004) ("The question whether the Southern District has jurisdiction over Padilla's habeas petition breaks down into two related subquestions."); see also id. at 434 n.7 ("We use [the word 'jurisdiction'] in the sense that it is used in the habeas statute, 28 U.S.C. § 2241(a), and not in the sense of subject-matter jurisdiction of the District Court."). First, the habeas petition must name "the proper respondent." Id. at 434; accord Vasquez v. Reno, 233 F.3d 688, 693 (1st Cir. 2000). In most cases, the proper respondent is "the warden of the facility where the prisoner is being held." Padilla, 542 U.S. at 435. Second, if the proper respondent has been named, the district court must actually "have jurisdiction over" that person. Id. at 434. "District courts are limited to granting habeas relief 'within their respective jurisdictions,'" id. at 442 (quoting 28 U.S.C. § 2241(a)), and the "writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody," Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494–95 (1973) (citing Wales v. Whitney, 114 U.S. 564, 574 (1885)). Accordingly, the person to whom the writ is addressed must be within the district court's

"territorial jurisdiction." [3] Padilla, 542 U.S. at 444. Together, the immediate-custodian and district-of-confinement rules "serve[] the important purpose of preventing forum shopping by habeas petitioners" by not allowing habeas petitioners to "name a high-level supervisory official as respondent and then sue that person wherever he is amenable to long-arm jurisdiction." Id. at 447.[4]

Two exceptions to the immediate-custodian and district-of-confinement rules are relevant here. First, in Padilla, the Supreme Court recognized that when a petitioner "is held in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian and district of confinement rules." 542 U.S. at 450 n.18 (citing Demjanjuk v. Meese, 784 F.2d 1114 (D.C. Cir. 1986)). Second, Ex parte Endo, 323 U.S. 283 (1944), establishes the "important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the

---

[3] By contrast, the "presence [of the person seeking release] within the territorial jurisdiction of the district court is not 'an invariable prerequisite' to the exercise of district court jurisdiction under the federal habeas statute." Rasul v. Bush, 542 U.S. 466, 478 (quoting Braden, 410 U.S. at 495).

[4] In Padilla, Justice Kennedy, who supplied the fifth vote, wrote separately to note that he "would acknowledge an exception if the Government's purpose in removing a prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention." 542 U.S. at 454. The First Circuit contemplated a similar exception in Vasquez:
> [W]e can envision that there may be extraordinary circumstances in which [a senior official, such as] the Attorney General appropriately might be named as the respondent to a habeas petition. . . . [One such] circumstance might be a case in which the INS spirited an alien from one site to another in an attempt to manipulate jurisdiction.

233 F.3d at 696. Based on the record here, however, there has been no showing of "furtiveness" or "bad faith." Id. Nonetheless, the discussion of such possible exceptions reflects the understanding that these two habeas rules could create improper obstacles for petitioners seeking the habeas remedy.

prisoner's release," Padilla, 542 U.S. at 441, even though the government's movement of the petitioner means that the original district court is no longer the district of confinement.

### B. The District of Confinement and Immediate Custodian Default Rules as Applied to This Case

At the time the Petition at issue was filed, Petitioner was on an airplane somewhere between Massachusetts and New York. His attorney filed the Petition in the district where she last knew him to be, which was also the district in which he was taken into custody. She had endeavored to ascertain whether he had been removed from Massachusetts but had been unable to obtain the information. Even if she had understood that he was likely to be removed from Massachusetts to another jurisdiction, she had no way of knowing that his new location would be in New York. Thus, she filed the Petition in the only location that made any sense in the moment.

Consistent with the default rules discussed above, "[t]he question whether [this Court] has jurisdiction over [Petitioner's] habeas petition breaks down into two related subquestions. First, who is the proper respondent to that petition? And second, does [this Court] have jurisdiction over him or her?" Padilla, 542 U.S. at 434. On the facts of this case, the answers to these questions are far from straightforward. At the time of filing, unbeknownst to Petitioner's attorney, Petitioner was on an airplane to New York. [ECF No. 15-2 ¶¶ 5–6, 9, 11, 14]; [ECF No. 8-1 ¶ 8]. Petitioner's counsel did not know where Petitioner was or even where he was being taken, and it remains unclear who his immediate custodian was at that time. Respondent argues that jurisdiction should lie only in the Western District of New York because Petitioner was on his way there. [ECF No. 8 at 1–2]. Petitioner disagrees, [ECF No. 15 at 1, 4–5], arguing that this Court acquired jurisdiction over his habeas petition at the time it was filed, when his location and immediate custodian were unknown to him (and, more importantly, to his attorney).

6

[ECF No. 15 at 1, 4–5]. As it must, the Court addresses the immediate-custodian and district-of-confinement rules separately, starting with the former. Ozturk v. Trump, 777 F. Supp. 3d 26, 42 (D. Mass. 2025) (citing Padilla, 542 U.S. at 447).

Determining the proper respondent to the Petition is more complicated than following the usual immediate-custodian rule given that, despite her best efforts, Petitioner's counsel didn't know who had custody of Petitioner when she filed his habeas corpus petition. See [ECF No. 15-2 ¶¶ 5–6, 9]. The facts at the time of filing resemble those of Demjanjuk, in which Judge Bork wrote:

> Demjanjuk is . . . in a confidential location. This means that petitioner's attorneys cannot be expected to file in the jurisdiction where petitioner is held. It is impracticable to require the attorneys to file in every jurisdiction, and it would be inappropriate to order the whereabouts of the petitioner made public. Yet it is essential that petitioner not be denied the right to petition for a writ of habeas corpus.

784 F.2d at 1115–16. Under such circumstances, the Supreme Court recognized that it is "impossible to apply the immediate custodian and district of confinement rules." Padilla, 542 U.S. at 450 n.18. Here, unlike in a straightforward habeas petition, in which "the appropriate district court [is] clear," the immediate-custodian rule must bend in order to preserve Petitioner's right to petition for the writ. Id. The course of action taken by Petitioner's counsel was logical: the Petition named Respondent Hyde, the acting director of the ICE field office where Petitioner was last known to be detained, but it also named several more senior respondents with regional or national enforcement powers, who would retain "legal authority to effectuate [Petitioner's] release," Padilla, 542 U.S. at 441, regardless of his location. See id. at 461 n.4 (Stevens, J., dissenting) (collecting cases in which more senior officials were named as respondents).

In light of the fact that, at the time of filing, Petitioner's true custodian was both unknown and, apparently, impossible to ascertain, and given Petitioner's reasonable decision to name both

7

his last known custodian and more senior respondents, the Court holds that the proper respondent or respondents for purposes of 28 U.S.C. § 2242 were named in the Petition.[5] See Munoz-Saucedo v. Pittman, 789 F. Supp. 3d 387, 394 (D.N.J. 2025) (permitting petition to be filed against senior respondents because attorneys for the petitioner "received conflicting, inaccurate, and delayed information about his whereabouts," meaning that strict application of the immediate-custodian and district-of-confinement rules would have "rendered any attempt to seek habeas relief during transit impossible"); Y.G.H. v. Trump, 787 F. Supp. 3d 1097, 1105 (E.D. Cal. 2025) (holding that the petitioner "appropriately named the Secretary of the Department of Homeland Security and the Acting Director of ICE as respondents" because, at the time the Petition was filed, "counsel could not and did not know the identity of Petitioner's immediate custodian, despite reasonable efforts to obtain that information"); Ozturk, 777 F. Supp. 3d at 41–42 ("[W]here ICE took Ozturk into custody in Massachusetts, but transported her to an unknown place, she cannot be faulted for filing the Petition in this Court against the Respondents with national and regional supervision over ICE."); Ozturk v. Hyde, 136 F.4th 382, 392 (2d Cir. 2025) ("The government cites no statute or case law for t[he] extraordinary proposition . . . that for some unspecified period of time after detention—seemingly however long the government chooses to take in transporting a detainee . . . —a detainee would be unable to file a habeas petition at all, anywhere. Such a rule finds no support in the law and is contrary to longstanding tradition." (first citing 3 William Blackstone, Commentaries *131; then citing Paul D. Halliday, Habeas Corpus: From England to Empire 161 (2012 ed.); and then citing Boumediene v. Bush,

---

[5] The Court declines to endorse a rule that would require judgments to be made in subsequent cases about how long a flight was in the air, which jurisdiction's air space it was in, or how far from departure or landing it was at the time a petition was filed.

553 U.S. 723, 739–46 (2008)); Khalil v. Joyce, 777 F. Supp. 3d 369, 403 (D.N.J. 2025) (collecting cases); Suri v. Trump, 785 F. Supp. 3d 128, 144 (E.D. Va. 2025) ("It strains credulity, however, that a habeas petition that properly named the petitioner's ultimate custodian and was filed in the district where the petitioner resides, was arrested, and was detained cannot be heard in that same district.").

The Court turns next to the district-of-confinement rule. Respondent Hyde was properly named at the time of filing, and she was within this Court's territorial jurisdiction. Statutory jurisdiction attached in that moment, and the subsequent revelation that Petitioner was not actually in the district at the time of filing does not require the Court to dismiss or transfer the action, provided that it is still capable of awarding the relief sought. See Braden, 410 U.S. at 499–500 (rejecting an "inflexible jurisdictional rule" for habeas petitions in favor of an analysis that prioritizes "traditional principles of venue," id. at 500, and the need to find a convenient forum for the litigation); Endo, 323 U.S. 283, 306 ("We . . . hold that the District Court acquired jurisdiction in this case and that the removal of Mitsuye Endo did not cause it to lose jurisdiction . . . ."). The Court is able to grant the Petition as long as there remains a person within this judicial district to whom the writ can be directed. See Braden, 410 U.S. at 495 ("So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' . . . even if the prisoner himself is confined outside the court's territorial jurisdiction"); Endo, 323 U.S. at 305 (statutory jurisdiction existed where Acting Secretary of the Interior advised the Court that the writ could be directed to "an assistant director [of the War Relocation Authority] whose office is at San Francisco, which is in the jurisdiction of the District Court"). In this case, the Court may direct the writ to a named respondent who operates a regional office in this district. See, e.g., Yancey v. Warden, FMC Devens, 682 F. Supp. 3d 97, 100 (D. Mass. 2023)

(collecting cases and noting that because "the BOP continues to operate within the district, . . . there remains an official within the district who may carry out any order the court may issue," despite the fact that the petitioner was then confined in a different district).[6]

## III.    CONCLUSION

For the reasons stated herein, the Court has statutory jurisdiction over the instant Petition. Respondents' motion to transfer, [ECF No. 8], is **DENIED**.

**SO ORDERED.**

November 13, 2025                                       /s/ Allison D. Burroughs
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE

---

[6] Alternatively, if the Court could not properly direct the writ to a regional office, it would find it retained statutory jurisdiction over Respondents where it wasn't possible to apply the district-of-confinement rule at the time the Petition was filed. See Suri, 785 F. Supp. 3d at 143–45 (discussing Padilla, 542 U.S. at 454, and recognizing "an exception [to the district-of-confinement rule] when the petitioner's location cannot be determined"). This is consistent with the rule's underlying purpose, which is to direct habeas litigation to the correct forum under traditional principles of venue and to avoid forum shopping, see Braden, 410 U.S. at 499–500. Because, at the time of filing, Petitioner's counsel could not know which district court had territorial jurisdiction over Petitioner's immediate custodian, this district was the logical place to file the Petition given that Petitioner "reside[d] [here], was arrested [here], and was detained [here]." Suri, 785 F. Supp. 3d at 144. Under these circumstances, there is no reason to transfer the matter to another district, particularly when doing so would plainly cause hardship for one party without providing a significant benefit to the other.