UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BINH VAN TRAN, *et al*., <br><br> Petitioner, <br><br> v. <br><br> PATRICIA HYDE, *et al*., <br><br> Respondents. | Civil Action No. 1:25-CV-12546-ADB |

**RESPONDENTS' OPPOSITION TO PETITIONER'S**
**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C § 2241**

Respondents by and through his attorney, Leah B. Foley, United States Attorney for the District of Massachusetts, respectfully submits this opposition to Binh Van Tran's ("Petitioner") Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Petition"). Doc. No. 1.

**INTRODUCTION**

Petitioner, subject to a final order of removal, argues that his detention by U.S. Immigration and Custom's Enforcement's ("ICE") violates statute, regulation, and the Constitution. As explained below, Petitioner fails to meet his burden to demonstrate his detention is unlawful and deserving of an order from this Court that he be released.

Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6) as he has a final order of removal and is inadmissible to the United States due to his conviction for second degree murder. *See* Declaration of ICE Enforcement and Removal Operations, Acting Assistant Field Office Director Andrew Oliveri, ¶ 5 (attached as Exhibit A). ICE took Petitioner into custody in

September of 2025 to facilitate the process necessary to effectuate his removal order to Vietnam. *Id.*, ¶ 13.

The United States currently has a repatriation agreement with Vietnam, which allows for the repatriation of Vietnamese citizens who may have entered the United States as refugees before July 12, 1995. *See* Supplemental Declaration of ICE Enforcement and Removal Operations, Acting Assistant Field Office Director Andrew Oliveri, ¶ 1 (attached as Exhibit B). Pursuant to this agreement, the United States is removing Vietnamese citizens that have entered the United States as refugees before July 12, 1995. *Id.*, ¶ 2. Per AFOD Oliveri, in fiscal year 2025, ICE processed four hundred and forty-eight (448) travel document requests with the Government of Vietnam, and of that amount, two hundred and ninety-six (296) travel document requests were for aliens who entered prior to 1995. *Id.*, ¶ 3. Of the travel document requests received for aliens who entered prior to 1995, two-hundred and seven (207) have been removed in FY2025. *Id.*

Per AFOD Oliveri, on December 10, 2025, ICE ERO submitted Petitioner's travel document request to the attaché, with a request for the attaché to present the request to the Government of Vietnam this week. *Id.*, ¶ 4. According to AFOD Oliveri, the Government of Vietnam typically takes approximately thirty (30) days to issue a travel document once it is presented. *Id.*, ¶ 5.

Petitioner's approximate three-month detention remains Constitutional under the Fifth Amendment as "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003); *see also Rodriguez-Guardado v. Smith*, 271 F. Supp. 3d 331, 335 (D. Mass. 2017) ("As petitioner has been detained

2

for approximately two months as of this date, the length of his detention does not offend due process.").

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner is a native and citizen of Vietnam. Exh. A, ¶ 6. Petitioner was paroled into the United States as a refugee in 1982. *Id.*, ¶ 7. On or about August 9, 1984, Petitioner was indicted for the offense of Murder in the First Degree for assaulting and beating a person with intent to murder him, and by such assault and beating did kill and murder the person. *Id.*, ¶ 22. On or about February 27, 1985, Petitioner pleaded guilty to Murder of the Second Degree in the Suffolk County Superior Court in Boston, Massachusetts and was sentenced to incarceration for life. *Id.*, ¶ 23.

Petitioner was arrested by the then Immigration and Naturalization Service and removal proceedings were instituted against him in September 2000. *Id.*, ¶¶ 9-10. Petitioner was ordered removed from the United States on October 5, 2000; Petitioner waived appeal of this removal order. *Id.*, ¶ 11. Petitioner was released from immigration custody pursuant to an Order of Supervision on or about April 10, 2001. *Id.*, ¶ 12.

Petitioner was arrested by ICE on September 11, 2025 after ICE Headquarters made a determination that there was a significant likelihood of Petitioner's removal in the reasonably foreseeable future. *Id.*, ¶ 13. ICE provided Petitioner with a Notice of Revocation of Release informing him that his Order of Supervision had been revoked and that he would be detained while the Government of Vietnam reviewed his case for issuance of a travel document. *Id.* On or about October 24, 2025, Petitioner completed the travel document request application. *Id.*, ¶ 17.

On or about December 5, 2025, ICE issued a letter to Petitioner notifying him that it had determined to continue his detention pending a decision on the travel document request. *Id.*, ¶ 18. An Immigration Judge ("IJ"), on December 5, 2025, conducted a bond hearing pursuant to district court order. *Id.*, ¶ 19. The IJ found that Petitioner did not meet his burden of proof to establish that he is not a danger to the community. *Id.*

## LEGAL STANDARD

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Section 2241 of Title 28 of the United States Code provides district courts with jurisdiction to hear federal habeas petitions.

It is Petitioner's burden to establish entitlement to a writ of habeas corpus by proving that his custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

## ARGUMENT

ICE's detention of Petitioner is authorized by statute and regulation and does not offend the Constitution.

    A.    **ICE is authorized to detain Petitioner.**

    **1. Petitioner is lawfully detained pursuant to 8 U.S.C. § 1231.**

ICE's detention authority stems from 8 U.S.C. § 1231, which provides for the detention and removal of aliens with final orders of removal. Section 1231(a)(1)(A) directs immigration authorities to remove an individual with a final order of removal within a period of 90 days; this

is known as the "removal period." During the removal period, section 1231(a)(2) commands that ICE "shall detain" the alien. If, however, the removal period has expired, ICE can either release the alien pursuant to an Order of Supervision as directed by Section 1231(a)(3) or may continue detention under Section 1231(a)(6). Per Section 1231(a)(6), ICE may continue detention beyond the removal period for three categories of individuals:

- Those who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;
- Those who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or
- Those whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal."

Because Petitioner's order of removal was final in 2000, Petitioner is now outside of the 90-day removal period during which the government "shall detain" the individual. 8 U.S.C. § 1231(a)(2). However, 8 U.S.C. § 1231(a)(6) allows ICE to detain Petitioner because he is inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) due to his prior conviction for a crime involving moral turpitude. *See Thai v. Hyde,* No. CV 25-11499-NMG, 2025 WL 1655489, at *2 (D. Mass. June 11, 2025) (Explaining that Section 1231(a)(6) allows for detention beyond the removal period for those who are inadmissible under Section 1182). As such, ICE has statutory authority to detain Petitioner to effectuate his removal order from the United States, and Petitioner is not entitled to a bond hearing[1] or release as Section 1231(a)(6) does not contemplate such process.[2]

---

[1] Petitioner, however, recently received a bond hearing in the Batavia Immigration Court and was determined not to have met his burden of proof to demonstrate he did not constitute a public safety risk if released. *See* Exhibit A, ¶ 19.

[2] The Supreme Court in *Johnson v. Arteaga-Martinez* answered the question of "whether the text of § 1231(a)(6) requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." 596 U.S. 573, 574 (2022). It responded definitively, holding that section 1231(a)(6)'s plain text, which "says

**2.      ICE's Revocation of Release Comports with Regulation.**

While 8 U.S.C. § 1231(a)(3) is silent as to revocation procedures for individuals like Petitioner who are released pursuant to an Order of Supervision, ICE has issued Post-Order Custody Regulations ("POCR") contained at 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 to set forth procedures concerning custody reviews, release from ICE custody, and revocation of release for individuals with final orders of removal.  Per Section 241.13(i)(2), ICE can "revoke an alien's release under this section and return the alien to custody if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future."

ICE's position is that it complied with Section 241.13(i)(2) in revoking Petitioner's Order of Supervision as the "changed circumstances" are the Memorandum of Understanding ("MOU") entered into between the United States and the Government of Vietnam in 2020 which allows for the more effective removal of Vietnamese nationals who entered the United States before 1995. Exh. A, ¶ 13; Exh. B, ¶¶ 15.  As Petitioner acknowledges when he was released in 2001 on an Order of Supervision, "the U.S. and Vietnam did not have an existing agreement to repatriate Vietnam nationals" such as himself.   Doc. No. 1, ¶ 33.  The 2020 MOU covers individuals such as Petitioner who entered prior to 1995 as Petitioner also recognizes.  *Id.*, ¶ 38.  Because Petitioner arrived prior to 1995 and therefore fits within the scope of the MOU, ICE determined that "there was a significant likelihood of removal in the reasonably foreseeable future" and revoked his Order of Supervision.  Exh. A, ¶ 13.

---

nothing about bond hearings before immigration judges or burdens of proof" [and] "directs that we answer this question in the negative." *Id.* at 581.

Respondents recognize that another session of this Court, in *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 150 (D. Mass. 2025) concluded that ICE failed to comply with 8 C.F.R. § 241.13 in revoking a Vietnamese national's Order of Supervision and ordered such alien's release as a result. In that case, the Court concluded that "the 2020 MOU alone is not enough to show ICE has met their burden under 8 C.F.R. § 241.13(i)(2)." *Id.* The Court also took issue with a lack of information provided as to "how many of the 328 individuals removed during Fiscal Years 2024 and 2025 were *pre-1995 Vietnamese refugees*, like Mr. Nguyen." *Id.* at 151 (emphasis in original). Finally, the Court took issue with ICE's failure to provide information about the current status of the petitioner's travel document request and the expected timing of a response from Vietnam on such request. *Id.* at 152.

Other courts have concluded, however, that similar revocations of Orders of Supervision did not violate applicable regulation, using reasoning that Respondents urge this Court to adopt considering the deference due the Executive, especially in matters involving immigration and foreign affairs. *See Zadvydas v. Davis*, 533 U.S. 678, 700 (2001) (Explaining that judicial "review must take appropriate account of the greater-expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive ... efforts to enforce this complex [area law of law], and the Nation's need to speak with one voice in immigration matters").

For example, in *Nguen v. Noem*, the court analyzed Section 241.13(l)(2) and concluded that this provision does not require "changed circumstances that are particular to Nguyen, such as respondents having travel documents in hand" prior to revocation. No. 6:25-CV-057-H, 2025 WL 2737803, at *7 (N.D. Tex. Aug. 10, 2025) (*Nguen N.D.*) Explained further, citing to the 2020 MOU, the court determined that "there is no reason that a broad change in circumstances that

7

applies to a broad group of aliens cannot have the effect of changing the circumstances of each of those particular aliens and thus let ICE determine that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." *Id.* The court explained that the "changed circumstance need not be that Nguyen's removal be certain or immediate … [r]ather, there need only be a significant likelihood that removal in the reasonably foreseeable future may occur." *Id.* at *8. As such, the court explained that it disagreed with the petitioner's contention that "meaningful changes in the diplomatic relationship between the United States and Vietnam would be insufficient as a matter of law" to constitute changed circumstances as required to revoke release under Section 241.13. *Id.* Here too, it is uncontroverted that Petitioner could not have been removed to Vietnam prior to 2020 when the MOU was implemented between respective governments. The issuance of the MOU is surely a change of circumstances as contemplated by Section 241.13(i)(2) that allowed revocation of Petitioner's Order of Supervision when coupled with ICE's determination of likelihood of removal in the reasonably foreseeable future based on the significant number of travel documents that have been approved by the Vietnamese government in 2025 for individuals who entered prior to 1995 such as Petitioner.

In another case involving ICE's revocation of a Vietnamese national's Order of Supervision, the district court in *Tran v. Baker* also found no regulatory violation. No. 1:25-CV-01598-JRR, 2025 WL 2085020, at *4 (D. Md. July 24, 2025), *corrected*, No. 1:25-CV-01598-JRR, 2025 WL 2087124 (D. Md. July 24, 2025). The court cited to ICE's notice to the petitioner that it had determined removal was foreseeable due to ICE's completion of a travel document request and explained that petitioner "has provided no authority on which to base a conclusion that such a level or degree of notice is insufficient" to provide authority to revoke release under the regulations. *Id.* The court also explained that it was "satisfied at this time that ICE has

8

drawn a reasonable conclusion that her removal to Vietnam in the reasonably foreseeable future is significantly likely based on the totality of circumstances" which included the completion of a travel document request and a declaration from ICE stating that "in the fiscal year of 2025, ICE has requested travel documents in 247 cases involving Vietnamese citizens. In 200 cases, ICE obtained the necessary travel documents from the Government of Vietnam. Of those 200 cases, 131 entered the United States before July 12, 1995." *Id.*

The information provided by ICE distinguishes this case from the *Nguen* decision from this Court. According to the supplemental declaration set forth by AFOD Oliveri, pursuant to the 2020 MOU, the United States is removing Vietnamese citizens that may have entered the United States as refugees before July 12, 1995, to Vietnam. Exh. B, ¶¶ 1-2. Per AFOD Oliveri, in fiscal year 2025, ICE processed four hundred and forty-eight (448) travel document requests with the Government of Vietnam, and of that amount, two hundred and ninety-six (296) travel document requests were for aliens who entered prior to 1995. *Id.*, ¶ 3. Of the travel document requests received for aliens who entered prior to 1995, two-hundred and seven (207) have been removed in FY2025. *Id.* Additionally, ICE expects Petitioner's travel document request to be presented to the Government of Vietnam this week and a decision on the request to be made within approximately 30 days thereafter. *Id.*, ¶¶ 4-5.

Considering the 2020 MOU, Petitioner's completed travel document request, and ICE's ability to remove individuals who arrived prior to 1995 to Vietnam, ICE had authority to revoke Petitioner's Order of Supervision. For these reasons, Respondents urge this Court to find that Petitioner has not met his burden to demonstrate that his current detention is unlawful.

### 3. Petitioner's statutorily authorized detention is constitutional.

Petitioner's claim that his detention violates the Fifth Amendment's Due Process Clause on the ground that his removal is not reasonably foreseeable also fails as this claim is raised prematurely under the *Zadvydas*-framework and is belied by evidence of ongoing removals of individuals similarly situated to Petitioner. When evaluating "reasonableness" of detention, the touchstone is whether an alien's detention continues to serve "the statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. And here, it does.

To set forth a constitutional violation for section 1231 detention, an individual must satisfy the *Zadvydas* test. *See Jimenez v. Cronen,* 317 F. Supp. 3d 626, 634 (D. Mass. 2018) (explaining that "*Zadvydas* addressed the substantive due process component of the Fifth Amendment. The Supreme Court held, in effect, that an alien's right to substantive due process could be violated by prolonged detention even if the alien's right to procedural due process had been satisfied"); *Castaneda v. Perry,* 95 F.4th 750, 760 (4th Cir. 2024) (explaining that "*Zadvydas*, largely, if not entirely forecloses due process challenges to § 1231 detention apart from the framework it established")*; Wang v. Ashcroft*, 320 F.3d 130, 146 (2d Cir. 2003) (noting that the *Zadvydas* "test articulates the outer bounds of the Government's ability to detain aliens . . . without jeopardizing their due process rights").

In *Zadvydas*, the Supreme Court held that the government cannot detain an alien "indefinitely" beyond the 90-day removal period. 533 U.S. at 682. The Supreme Court "read an implicit limitation into the statute . . . in light of the Constitution's demands" and held that section 1231(a)(6), "limits an alien's post-removal-period detention to a period reasonably necessary to

bring about the alien's removal from the United States." *Id.* at 689. The *Zadvydas* Court held that post-removal detention for six months is "presumptively reasonable." *Id.* at 701.

Beyond six months, the Supreme Court explained, an individual could file a habeas petition seeking release. *Id.* at 700-01. In such petition, the individual must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the individual does so, the burden would then shift to the government to produce "evidence sufficient to rebut that showing." *Id.* "[A]n alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Petitioner's Due Process challenge fails under his present circumstances. A prior release pursuant to an Order of Supervision does not provide Petitioner with a constitutional basis not to be arrested again in the future if ICE determines effectuation of his removal order is possible or if ICE determines Petitioner has violated the terms of his Order of Supervision. As explained by another session of this Court, if "the government in granting discretionary relief to an alien foreswears its ability to later detain an alien as part of the removal mechanism, then the government would have every incentive to abstain from any favorable exercise of discretion." *Rodriguez-Guardado,* 271 F. Supp. 3d at 335. Stated similarly, "[it] does not withstand scrutiny to suggest that upon securing the liberty afforded by an OSUP, after six months have passed, a non-citizen has effectively been granted a shield to guard himself from detention upon revocation while removal is in process." *Tanha v. Warden, Baltimore Det. Facility*, No. 1:25-CV-02121-JRR, 2025 WL 2062181, at *8 (D. Md. July 22, 2025); *see also Hango v. U.S. Att'y Gen.*, No. 3:05-CV-2196, 2019 WL 1301981, at *2 (W.D. La. Mar. 21, 2019) (Explaining that a

prior order of release on account of the lack of ability to remove an alien "did not amount to a permanent injunction against future detention.").

Petitioner's argument that his detention is unlawful because his removal cannot be promptly effectuated fails at this juncture because it is premature under the *Zadvdyas*-framework. He has been detained for approximately three-months—since September 2025—short of the six-month period which is presumptively constitutional under *Zadvydas*. This Court has routinely declined to find due process violations of post-final order detention of periods short of *Zadvydas*' six month presumptively reasonable period. For example, in *Thai v. Hyde*, 788 F. Supp. 3d 57, 61 (D. Mass. 2025), ICE revoked an individual's Order of Supervision and detained the individual pending removal to Cambodia. The Court explained that "to the extent petitioner suggests that the duration of his detention violates his due process rights, such an argument is unavailing" as his detention for 17 days was "far short of the six-month period which is presumptively constitutional under *Zadvdyas*." *Id.*

Other sessions of this Court have held similarly. *See e.g.*, *D'Ambrosio v. McDonald,* 793 F. Supp. 3d 271, 278 n.8 (D. Mass. 2025) (Explaining that "petitioner has been detained for less than six months, rendering his detention under § 1231 presumptively valid at this time."); *Rodriguez-Guardado,* 271 F. Supp. 3d at 335 ("As petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process."); *Julce v. Smith*, No. CV 18-10163-FDS, 2018 WL 1083734, at *5 (D. Mass. Feb. 27, 2018) (Habeas petition deemed "premature at best" as it was filed after three months of post-final order detention); *Lamotte v. Holder*, No. CIV.A. 13-10582-RGS, 2013 WL 1629135, at *2 (D. Mass. Apr. 9, 2013) ("Under this formulation, an alien being held pursuant to Section

12

1231(a)(6) cannot assert a Zadvydas due process claim if he has been detained for less than six-months.").

Courts around the country have also found that "the removal-period clock restarts when an alien subject to a removal order is again detained by ICE." *Liu v. Carter,* No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025); *Guerra-Castro v. Parra*, No. 1:25-CV-22487, 2025 WL 1984300, at *4 (S.D. Fla. July 17, 2025) (Denying habeas petition after order of supervision was revoked because "[p]etitioner has been in detention since May 29, 2025; therefore, his two-month detention is lawful under *Zadvydas*."); *Umanzor-Chavez v. Noem*, No. CV SAG-25-01634, 2025 WL 2467640, at *4 (D. Md. Aug. 27, 2025) (Explaining after revocation of an Order of Supervision that the "Supreme Court was clear that the government is entitled to a reasonable period to determine the [p]etitioner's removability"—and such period is six months).[3]

The concern highlighted by this Court in *Siguenza* – "that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them" is not present in this case as Petitioner has not been arrested or detained by ICE on any other occasion since his release from custody in 2000. 2025 WL 2734704, at *3. As Petitioner has been detained for less than six-months after his arrest in September 2025, Petitioner's detention remains authorized by statute and does not offend the constitution under *Zadvydas*.

---

[3] Respondents recognize that courts have reached the opposite conclusion as well. *Siguenza v. Moniz,* No. 25-CV-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) (collecting cases finding that the *Zadvydas* period is cumulative).

ICE's position is that this action is premature under *Zadvdyas* and even if Petitioner's prior period of detention is counted to meet the six-month period, Petitioner still is unable to show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas,* 533 U.S. at 701. In analyzing the likelihood of removal, courts consider a variety of factors, including the existence of a repatriation agreement with the target country, the target country's prior record of accepting removed aliens, and specific assurances from the target country regarding its willingness to accept an alien. *Callender v. Shanahan*, 281 F. Supp. 3d 428, 436-37 (S.D.N.Y. 2017).

To meet his burden, a petitioner must "present more than mere assertions that removal is unforeseeable" and it is not "sufficient for the petitioner to show that the government has been unable to obtain a travel document to date." *Id.* at 435. *See also Ali v. Barlow*, 446 F. Supp. 2d 604, 610–11 (E.D. Va. 2006) (Denying petition as "[p]etitioner has provided no evidence, beyond his own assertions, to show that removal is not significantly likely. Based on ICE's efforts, and the fact that the presumptively reasonable post-removal detention period has not yet expired, the current record compels the conclusion that petitioner has not met his burden to show that removal is not significantly likely in the foreseeable future.").

Here, the existence of the 2020 MOU between the respective governments, Petitioner's completion of a travel document request, and the successful issuance of travel documents and repatriation of Vietnamese nationals who entered the United States prior to 2020 counsel against finding that Petitioner has met his burden to demonstrate "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Zadvydas,* 533 U.S. at 701. According to the supplemental declaration set forth by AFOD Oliveri, pursuant to the 2020 MOU, the United States is removing Vietnamese citizens that may have entered the United

States as refugees before July 12, 1995, to Vietnam.  Exh. B, ¶¶ 1-2.  Per AFOD Oliveri, in fiscal year 2025, ICE processed four hundred and forty-eight (448) travel document requests with the Government of Vietnam, and of that amount, two hundred and ninety-six (296) travel document requests were for aliens who entered prior to 1995.  *Id.*, ¶ 3.  Of the travel document requests received for aliens who entered prior to 1995, two-hundred and seven (207) have been removed in FY2025.  *Id.*  Additionally, ICE expects Petitioner's travel document request to be presented to the Government of Vietnam this week and a decision on the request to be made within approximately 30 days thereafter.  *Id.*, ¶¶ 4-5.

As the Supreme Court explained in *Zadvydas*, judicial review of habeas petitions involving detention of individuals with final orders of removal  "must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive [ICE] efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters."  *Id.* at 700.  Stated further, the Court explained that "principles of judicial review in this area recognize primary Executive Branch responsibility" and "counsel judges to give expert agencies decisionmaking leeway in matters that invoke their expertise."  *Id.*  Per the *Zadvydas* Court, such principles "require courts to listen with care when the Government's foreign policy judgments, including, for example, the status of repatriation negotiations, are at issue".  *Id.*

As such, this Court should "grant the Government appropriate leeway when its judgments rest upon foreign policy expertise" and provide additional time to ICE to determine whether a travel document is approved for Petitioner under the auspices of the 2020 MOU.  Petitioner can file a new action if he remains detained once he reaches six-months of detention as contemplated by *Zadvydas*.

## CONCLUSION

For the above reasons, this Court should deny Petitioner's request for relief and decline to order his release from custody.

|  |  |  |
|---|---|---|
|  | | LEAH B. FOLEY<br>United States Attorney |
| Dated: December 10, 2025 | By: | */s/ Mark Sauter*<br>Mark Sauter<br>Assistant United States Attorney<br>United States Attorney's Office<br>1 Courthouse Way, Suite 9200<br>Boston, MA 02210<br>Tel.: 617-748-3347<br>Email: mark.sauter@usdoj.gov |

## CERTIFICATE OF SERVICE

I, Mark Sauter, Assistant United States Attorney, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

| | | |
|---|---|---|
| Dated:  December 10, 2025 | By: | */s/ Mark Sauter*<br>Mark Sauter<br>Assistant United States Attorney |