UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| BINH VAN TRAN, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | |
| | * | |
| PATRICIA HYDE, *Acting Director of the* | * | Civil Action No. 25-cv-12546-ADB |
| *Boston Field Office, U.S. Immigration and* | * | |
| *Customs Enforcement*; TODD LYONS, | * | |
| *Acting Director of U.S. Immigration and* | * | |
| *Customs Enforcement*; MICHAEL KROL, | * | |
| *HSI New England Special Agent in Charge*; | * | |
| and KRISTI NOEM, *Secretary of the U.S.* | * | |
| *Department of Homeland Security*; in their | * | |
| official capacities, | * | |
| | * | |
| Respondents. | * | |
| | * | |

**<u>MEMORANDUM AND ORDER</u>**

BURROUGHS, D.J.

Before the Court is Petitioner Binh Van Tran's Emergency Motion for Reconsideration,

[ECF No. 26 ("Mot.")].  For the reasons set forth herein, the motion is **<u>GRANTED</u>**.

I.      **BACKGROUND**

A.      **Factual History**

The facts underlying this habeas petition were fully set forth in the Court's memorandum

and order denying Respondents' motion to transfer this action to the Western District of New

York, [ECF No. 21].  As relevant here, Petitioner is a sixty-nine-year-old noncitizen who entered

the United States as a refugee from Vietnam around 1982, when he was about twenty-six years

old.  [ECF No. 1 ("Pet.") ¶¶ 3, 20–21].  In 2000, Tran received a final order declaring him removable pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(I).  [ECF No. 32-1 ("First Oliveri Decl.") ¶¶ 9–11].  At that time, because the United States did not have a repatriation agreement with Vietnam for people who had arrived in the United States before 1995 ("pre-1995 arrivals"), it was not possible to obtain travel documents for Tran.  [Pet. ¶¶ 31, 33–34].  He was detained for six months following the entry of his final order of removal, then released from custody on an order of supervision in April 2001.  [Id. ¶ 32].  For nearly twenty-five years, Tran complied with his order of supervision without incident, [id. ¶ 35], and worked full-time at a hardwood flooring supply company until recently, when he stopped working to care for his wife, who is seriously ill, [id. ¶¶ 23–24].

In 2020, the United States and Vietnam signed a Memorandum of Understanding ("2020 MOU"), pursuant to which Vietnam has begun to accept removals of pre-1995 arrivals.  [Id. ¶ 38]; [ECF No. 32-2 ("Second Oliveri Decl.") ¶¶ 1–2].  In September 2025, following a routine email check-in, Tran was instructed to report to ICE's Boston Field Office.  [ECF No. 15-1 ("Tran Decl.") ¶¶ 4–5].  He reported as instructed, and an "officer informed [him] that ICE [was] now able to deport individuals to . . . Vietnam."  [Id. ¶ 8].  The officers asked whether Tran had a passport or other travel document.  [Id.].  Tran did not have a travel document, but he was willing to begin paperwork to request one.  [Id.].  Tran completed a self-declaration form right then and ICE detained him shortly thereafter.  [Id. ¶¶ 8, 10–12].  Tran remains in ICE detention and ICE intends to detain him until he can be removed to Vietnam.

### B.    Removal to Vietnam

When Tran was taken into custody on September 11, 2025, he was informed that "his case [was] or [would] be under review by the Government of Vietnam for the issuance of a travel

document." [First Oliveri Decl. ¶ 13]. Apart from completing the self-declaration form on the day he was detained, [Pet. ¶ 42], neither Tran nor the government had prepared any materials for submission to the government of Vietnam prior to his detention. Sometime later, Tran's full application for travel documents was completed, see [First Oliveri Decl. ¶ 17], and three months after he was taken into custody, the application was given to a United States attaché, [Second Oliveri Decl. ¶ 4], who presented it to the government of Vietnam on December 12, 2025, [ECF No. 35-1 ¶ 1].

Despite Tran's request for travel documents having been submitted to the Vietnamese government, the parties continue to disagree about the likelihood and imminence of Tran being issued the documents. Respondents claim that travel documents typically issue within thirty days. [Second Oliveri Decl. ¶ 5]. Tin Thanh Nguyen, an attorney who "specialize[s] in immigration and deportation cases involving Vietnamese citizens," has filed a declaration on Tran's behalf describing a longer timeline. [ECF No. 34 ("Nguyen Decl.") ¶ 5]. Nguyen notes that "the most challenging client matters involve [pre-1995 arrivals]," [id. ¶ 8], because "the Vietnamese government subjects . . . travel document applications made by [p]re-1995 arrivals to substantial vetting," [id. ¶ 9], including official site visits to a person's last known address and interviews of surviving relatives, [id. ¶ 10]; cf. [Tran Decl. ¶ 9 ("[Before checking in with ICE,] I had alerted my youngest brother in Vietnam that . . . Vietnamese officials may contact him if they ask me to submit travel paperwork.")]. According to Nguyen, it is not possible to know "the likelihood that the Vietnamese government will approve a particular [p]re-1995 arrival's request," [Nguyen Decl. ¶ 14], and if "an application fails to pass this substantial vetting process, the Vietnamese government will . . . take no action," [id. ¶ 15], resulting in an "informal denial" of which the United States may not receive formal notice, [id.]. Nguyen has worked on nearly

one hundred cases involving travel document requests for pre-1995 arrivals in 2025 and has never seen a travel document issued within thirty days.  [Id. ¶ 16].  In her experience, "it can take many months to get any answer," [id.], and the answer is not always an approval, [id. ¶ 18].  Respondents acknowledge that two hundred and ninety-six travel document requests for pre-1995 arrivals have been submitted in fiscal year 2025, and that eighty-nine of those people—more than one in four—have not been removed.  [Second Oliveri Decl. ¶ 3].

### C.    Procedural History

Tran filed his Petition on September 11, 2025.  [Pet.].  On September 19, 2025, Respondents filed a motion to transfer the Petition to the Western District of New York, where Tran is currently detained.  [ECF No. 8].  On November 13, 2025, the Court denied the motion and ordered Respondents to file a response to the Petition.  [ECF Nos. 21, 22].  On November 26, 2025, Respondents filed a response in which they stated that the "legal issues presented in [Tran's] Petition" were similar to those presented in Morales v. Plymouth County Correctional Facility, No. 25-cv-12602, ECF No. 15 (D. Mass. Sept. 30, 2025), and that "should the Court follow [that] reasoning . . . , it would reach the same result here."  [ECF No. 24 at 1].  Relying on this, the Court followed its reasoning in Morales and ordered that Tran receive a bond hearing.[1]  [ECF No. 25].

Eight days later, on December 4, 2025, Tran filed the instant emergency motion for reconsideration, [Mot.], asserting that Morales was inapplicable and that he was still seeking a decision on the arguments presented in his Petition.  [Id. at 7–8].  Respondents do not contest

---

[1] Tran received a bond hearing on December 5, 2025, [First Oliveri Decl. ¶ 19], at which he was denied bond.  The Court does not discuss the issue of bond further because, as the parties now agree, Tran is not detained pursuant to any statutory provision that would entitle him to release on bond.

that <u>Morales</u> was inapplicable or that Tran is entitled to a decision on the merits of his Petition.

They filed an opposition responding to the Motion and the original Petition on December 10,

2025, [ECF No. 32], and the Court held a hearing on the Motion the following day, [ECF

No. 33]. The parties subsequently filed certain materials discussed at the hearing, <u>see</u> [ECF Nos.

34, 35, 37], and the Motion is now ripe for decision.

II.    **DISCUSSION**

Tran makes two arguments: (1) that he was redetained in violation of the requirements of

8 C.F.R. § 241.13(i)(2), [Mot. at 7], and (2) that even if his redetention was permitted by 8

C.F.R. § 241.13(i)(2), it is independently unlawful because it violates his Fifth Amendment due

process rights, [<u>id</u>. at 8]. Because the Court concludes that ICE exceeded its regulatory authority

when it redetained Tran, the Court does not reach the question of whether his redetention was

unlawful on constitutional grounds.

### A.    Regulatory Authority for Redetention

"[O]nce a noncitizen has been granted supervised release, that release can only be

revoked upon a showing that because of changed circumstances there is now a 'significant

likelihood that the [noncitizen] will be removed in the reasonably foreseeable future.'" <u>Kong v.</u>

<u>United States</u>, 62 F.4th 608, 620 n.12 (1st Cir. 2023) (quoting 8 C.F.R. § 241.13(i)(2)). ICE

must make an "individualized determination" as to each person whose release it seeks to revoke.

<u>Id.</u> at 619. In deciding whether the requisite changed circumstances exist, ICE relies on the

factors enumerated in 8 C.F.R. § 241.13(f), and a court considering a challenge to redetention

must likewise "review [ICE's] claim" that removal is significantly likely in the reasonably

foreseeable future "in light of" those same factors. <u>Id.</u> at 620. Courts, both those interpreting

<u>Kong</u> and those analyzing § 241.13 independent of <u>Kong</u>, generally place a burden on ICE to

prove that removal is significantly likely in the reasonably foreseeable future as to that particular person.[2]  Neither Tran nor Respondents have argued that the Court should take a different approach to reviewing ICE's redetention decision, and the Court does not find reason to do so.

Accordingly, the Court will consider the evidence presented by ICE in light of the factors enumerated in § 241.13(f) to determine whether ICE's redetention decision was supported by changed circumstances.  8 C.F.R. § 241.13(f) instructs ICE to consider "all the facts of the case" while giving particular weight to certain elements, namely:

> . . . the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.

8 C.F.R. § 241.13(f).  Based on the specific facts of this case, three of these elements have little impact on the likelihood of removability in the reasonably foreseeable future.  Concerning "the

---

[2] The majority of recent cases follow this approach.  See, e.g., Nguyen v. Hyde, 788 F. Supp. 3d 144, 150–51 (D. Mass. 2025) (discussing Kong); Hoac v. Becerra, No. 25-cv-01740, 2025 WL 1993771, at *3–4 (E.D. Cal. July 16, 2025) (same); Roble v. Bondi, No. 25-cv-03196, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) (same); Escalante v. Noem, No. 25-cv-00182, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025) (independent analysis); Yee S. v. Bondi, No. 25-cv-02782, 2025 WL 2879479, at *4 (D. Minn. Oct. 9, 2025) (same); Phongsavanh v. Williams, No. 25-cv-00426, 2025 WL 3124032, at *3–4 (S.D. Iowa Nov. 7, 2025) (independent analysis; noting that petitioner could have made a threshold showing that removal was unforeseeable if required); Abuelhawa v. Noem, No. 25-cv-04128, 2025 WL 2937692, at *8–9 (S.D. Tex. Oct. 16, 2025) (independent analysis; first requiring threshold showing that removal was unforeseeable; finding that petitioner had made such showing).

Two sessions of the Northern District of Texas have taken a different approach.  These orders at least partially reject Kong's analysis, and rather than placing a burden on respondents to show changed circumstances, they first require the petitioner to provide sufficient evidence as to why the court should "deny the presumption of regularity" in favor of the respondents. Nouansisouhak v. Noem, 25-cv-02222, 2025 WL 3165161, at *4 (N.D. Tex. Oct. 9, 2025); accord Nguyen v. Noem, 797 F. Supp. 3d 651, 669 (N.D. Tex. 2025).  The Court declines to adopt that approach.

history of [Tran's] efforts to comply with the order of removal," the record does not contain any relevant information that would have been available at the time that Tran was redetained. As to "the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question," Respondents have not produced any evidence. Finally, concerning "[Tran's] assistance with [the government's efforts to remove him]," Tran was willing to assist the government—he notified his brother in Vietnam to expect an interview by the Vietnamese government, [Tran Decl. ¶ 9], voluntarily reported to ICE when instructed, [id. ¶¶ 5–7], and completed a self-declaration form for travel documents at ICE's request, [id. ¶ 8]— but because the government had not actually commenced any effort to remove him at the time he was redetained, it is not clear how this factor could bear on the changed circumstances inquiry.

As to the elements that do bear on the finding, on the record before it, the Court concludes as follows. "[T]he history of [ICE's] efforts to remove aliens to [Vietnam]" weighs in favor of finding a significant likelihood of removability in the reasonably foreseeable future because ICE has, relatively recently, removed a significant number of pre-1995 arrivals. [Second Oliveri Decl. ¶ 3]. On the other hand, "the ongoing nature of [ICE's] efforts to remove [Tran]" weighs against a finding of significant likelihood of removability in the reasonably foreseeable future. When Tran was redetained, there had not been any ongoing effort to remove him. Tran was detained solely on the basis that other pre-1995 arrivals had successfully been removed, and because the government expected that, after completing the process of requesting and receiving travel documents, it would similarly be able to remove Tran. In other words, there was no individualized determination of his circumstances.

Further, even treating the self-declaration completed by Tran minutes prior to his detention as the start of an effort to remove him, the Court is not persuaded that it was

reasonable, solely on the basis of that completed document, to conclude that Tran's removal was significantly likely within a reasonably foreseeable timeframe. Using the facts of this case as a reference, the Court notes that it took roughly three months from the day that Tran completed his self-declaration before a completed application was even presented to the Vietnamese government. Additionally, presenting such an application to the Vietnamese government represents only the first half of the removal process. The Vietnamese government must approve the request, and the record suggests that for pre-1995 arrivals, a completed travel document request does not guarantee approval, and certainly not within a predictable timeframe. [Nguyen Decl. ¶¶ 9–10, 14–16]; [Second Oliveri Decl. ¶ 3].

ICE's analysis under § 241.13(i) must be "individualized." Kong, 62 F.4th at 619. The only reasons that ICE had for redetaining Tran on September 11 were that (1) other pre-1995 arrivals had successfully been removed and (2) Tran had completed a self-declaration form. As noted, these two facts alone are not sufficient, in light of the factors enumerated in § 241.13(f), to establish that Tran was reasonably likely to be removed in the reasonably foreseeable future. See Hoac, 2025 WL 1993771, at *4 ("The fact that Respondents intend to complete a travel document request for Petitioner does not make it significantly likely he will be removed in the foreseeable future."); Phan v. Noem, No. 25-cv-02422, 2025 WL 2898977, at *4 (S.D. Cal. Oct. 10, 2025) (holding that ICE's ongoing efforts to assemble a travel document request were insufficient to show changed circumstances); Liu v. Carter, No. 25-cv-03036, 2025 WL 1696526, at *3 (D. Kan. June 17, 2025) ("[T]he fact that officials did not even request [travel documents] for petitioner from the Chinese authorities until May . . . undercuts any suggestion that petitioner's release was in fact revoked in January because the likelihood of obtaining [those documents] had increased to any material degree.").

8

### B.    Mootness in Light of Subsequent Developments

The Court next considers whether this action is moot or requires a different outcome in light of the further steps taken by Respondents during the three months that Tran has been detained—namely, completing his application for travel documents and presenting it to the Vietnamese government.  The Court concludes that it is not.  Though the government has taken further steps, the record does not yet suggest that Tran's removal is significantly likely in the reasonably foreseeable future, particularly given the number of pre-1995 arrivals who are not promptly removed following the submission of a request for travel documents.  The Court thus concludes that Tran's present detention exceeds Respondents' regulatory authority.[3]  See Nguyen, 788 F. Supp. 3d at 153 ("If and when ICE secures a travel document . . . ICE may . . . re-detain [petitioner] for removal.").

## III.    CONCLUSION

For the reasons stated above, Tran's Petition is **GRANTED**.  Respondents are hereby **ORDERED** to release Tran pursuant to the Order of Supervision that was in effect prior to his redetention.

**SO ORDERED.**

December 24, 2025                                        _/s/ Allison D. Burroughs_
                                                        ALLISON D. BURROUGHS
                                                        U.S. DISTRICT JUDGE

---

[3] The Court also notes that there is no evidence that Tran's detention is necessary to ensure his compliance with an eventual removal order, given that he has complied with all instructions for over two decades and, in October, sought to participate in a voluntary removal program.